UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 13-12116-RGS

DONNA CADES

v.

THE BANK OF NEW YORK MELLON AS TRUSTEE FOR THE
CERTIFICATE HOLDERS CWABS, INC., ASSET-BACKED
CERTIFICATES, SERIES 2006-2

and

PACIFICA SEACOVE, LP

MEMORANDUM AND ORDER ON DEFENDANTS'
MOTION TO DISMISS

November 29, 2013

STEARNS, D.J.

Plaintiff Donna Cades sued defendants, The Bank of New York Mellon

(BNYM) and Pacifica Seacove, LP (Pacifica), seeking to undo a foreclosure sale

that followed her default on a home mortgage loan.[1] Cades asserts that BNYM,

as the Trustee for CWBAS, Inc., Asset-Backed Certificates, Series 2006-2,

failed to square the corners of Mass. Gen. Law ch. 244, § 35A (The Right to

---

[1] Pacifica, the purchaser at the sale, has joined in BNYM's Motion to
Dismiss.

Cure Statute), and Paragraph 22 of her Mortgage Agreement.[2] Cades asks that the court enter a declaratory judgment "set[ting] aside the foreclosure sale," "restor[ing] title to the property," and "[a]ward[ing] the Plaintiff damages, costs, and attorney's fees."  Pl.'s Mem. ¶ 98.  Defendants argue that the Complaint fails to state a cognizable claim for relief pursuant to Fed. R. Civ. P. 12(b)(6).  Defendants' motion will be granted.

## BACKGROUND

In 1991, Cades and her former husband purchased 121 Bogastow Brook Road in Holliston, Massachusetts (Property), for $160,650.  On December 5, 2005, Cades refinanced the Property with Countrywide Home Loans, Inc. (Countrywide).  She executed a promissory note for $365,000 secured by a mortgage in favor of Mortgage Electronic Registration Systems, Inc. (MERS), which was acting as the nominee for Countrywide.  Cades defaulted on her mortgage payments in February of 2006. On March 8, 2006, Countrywide sent Cades a right to cure notice, which Cades exercised the following month.  She then defaulted on her May, June, July, and August of 2006 mortgage payments.

_____

[2] Cades alleges the following claims against both BNYM and Pacifica: wrongful foreclosure (Count I); declaratory judgment to determine the validity of the mortgage assignment (Count II); violation of Mass. Gen. Laws ch. 93A, (Count III); declaratory judgment to set aside foreclosure sale and sale to Pacifica (Count IV); and declaratory judgment to set aside the foreclosure by entry (Count V).

Seeking again to cure the default, Cades entered into a restructuring plan with Countrywide, which was intended to bring her loan current by May 5, 2007. However, in 2008, Cades defaulted on her July and August payments. Following these defaults, on August 4, 2008, Countrywide sent her another right to cure notice (2008 Notice). The 2008 Notice is the focal point of Cades's Complaint.

Nothing further occurred until July 27, 2011, when MERS assigned the Mortgage to BNYM, which, on November 2, 2011, foreclosed on the Property. BNYM tendered the winning bid at the foreclosure sale ($283,500). On the same day, BNYM executed a Certificate of Entry.[3] On November 15, 2012, BNYM transferred the Property to Pacifica.[4] At some point after the purchase, Pacifica initiated a summary process eviction proceeding in the Framingham District Court, which has been stayed, presumably in deference to this action. Cades in the meantime has remained in the Property.

On August 1, 2013, Cades filed the instant Complaint in the Middlesex Superior Court, alleging that the 2008 Notice failed to comply with the Right

---

[3] BNYM recorded the Certificate at the Southern Middlesex Registry of Deeds on July 26, 2012.

[4] This Deed was recorded at the Southern Middlesex Registry of Deeds on December 5, 2012.

3

to Cure Statute.  She also challenged the validity of the MERS Assignment to

BNYM.  The suit was thereafter removed by BNYM to the federal district court

where briefing on BNYM's  motion to dismiss concluded on October 2, 2013.

DISCUSSION

To survive a motion to dismiss, "a complaint must contain sufficient

factual matter, accepted as true, to 'state a claim to relief that is plausible on its

face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), quoting *Bell Atl. Corp. v.

Twombly*, 550 U.S. 544, 570 (2007).  The Supreme Court explained in

*Twombly* that "[w]hile a complaint attacked by a Rule 12(b)(6) motion does not

need detailed factual allegations, a plaintiff's obligation to provide the grounds

of his entitlement to relief requires more than labels and conclusions, and a

formulaic recitation of the elements of a cause of action will not do." 550 U.S.

at 555 (internal citations and quotations omitted).  In reviewing a Rule 12(b)(6)

motion, the court "may consider 'documents the authenticity of which are not

disputed by the parties; documents central to plaintiff['s] claim; and documents

sufficiently referred to in the complaint.'"  *Curran v. Cousins*, 509 F.3d 36, 44

(1st Cir. 2007), quoting *Watterson v. Page*, 987 F.2d 1, 3 (1st Cir. 1993)

(original alterations omitted).

**Wrongful Foreclosure (Count I)**

Cades's first claim rests on two premises. She first contends that the 2008

4

Notice did not comply with Paragraph 22 of the Mortgage Agreement. Paragraph 22 provides in relevant part as follows.

> Acceleration; Remedies. Lender shall give notice to borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument . . . . *The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale*. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the STATUTORY POWER OF SALE and any other remedies permitted by Applicable Law.

Compl. - Ex. 2 at 10 (emphasis added).

The 2008 Notice in relevant part states that "you *may* have the right to bring a court action to assert the non-existence of a default or any other defense you may have to acceleration and foreclosure" (emphasis added). Cades contends that this permissive language fatally dilutes the force of Paragraph 22 by substituting the word "may" for "shall," thereby implying that the right to bring a court action is "speculative." Compl. ¶ 57 (emphasis added).

Under Massachusetts law, a mortgagee may exercise the statutory power of sale "upon any default in the performance or observance of the [statutory] condition . . . by first complying with the terms of the mortgage and with the statutes relating to the foreclosure of mortgages by the exercise of a power of sale." Mass. Gen. Laws ch. 183, § 21. Because the statutory scheme allows a

mortgage holder to initiate a foreclosure without judicial approval or immediate judicial oversight, "'one who sells under a power [of sale] must follow strictly its terms.  If he fails to do so there is no valid execution of the power, and the sale is wholly void.'"  *U.S. Bank Nat'l Ass'n v. Ibanez*, 458 Mass. 637, 649-650 (2010), quoting *Moore v. Dick,* 187 Mass. 207, 211 (1905).  There is, however, a caveat.   "[S]trict compliance does not necessarily mean punctilious compliance, if with minor deviations from language described in the Act, there is still a substantial, clear disclosure of the fact or information demanded by the applicable statute or regulation." *Santos-Rodriguez v. Doral Mortg. Corp.*, 485 F.3d 12, 17 (1st Cir. 2007) (interpreting the analogous Truth in Lending Act standard).   The general rule is that language in a notice to cure alerting a borrower to the right to assert a legal defense is sufficient despite the absence of a specific reference to a lawsuit or a court of law.  *See Townsend v. Federal Nat'l Mortg. Ass'n*, 923 F. Supp. 2d 828, 836 (W.D. Va. 2013) (finding no material discrepancy in the use of an acceleration notice utilizing the words "the right to argue" in lieu of "the right to sue").

Here, the only difference between the 2008 Notice and the language in Paragraph 22 is the use of the word "may" instead of "shall."  (The 2008 Notice specifically referenced a "court action").  The best evidence that the substitution is immaterial and that the language of the 2008 Notice served its purpose is the

fact that Cades has challenged the foreclosure by bringing this lawsuit. Therefore, her first premise fails.

Cades's second premise, which provides the basis for her remaining claims, is that the 2008 Notice did not strictly comply with The Right to Cure Statute. Section 35A requires a mortgagee to send a notice of default/right-to-cure letter to the mortgagor before initiating foreclosure proceedings. While Cades does not contest receipt of the 2008 Notice, she alleges the letter to be deficient in two respects, namely, that the 2008 Notice "did not include the name and the address of the mortgagee," nor did it "identify the mortgage broker or mortgage loan originator." Compl. ¶ 60. The reasoning behind Cades's allegation is that the 2008 Notice identified only Countrywide and did not mention MERS (Countrywide's nominee). Cades also alleges that the 2008 Notice did not "designate an individual for Ms. Cades to contact in the event of a dispute," as Section 35A requires. *Id*. ¶ 61. Cades argues that "[c]ompliance with Section 35A is a condition precedent to the exercise of the statutory power of sale and must be strictly complied with, or else the foreclosure sale is void." *Id*. ¶ 62. (She does not, however, attribute any confusion or detrimental reliance on her part to the purported defects in the Notice).

Courts that have addressed the issue are of no single mind as to whether Section 35A is, or is not, an integral component of the statutory power of sale.

7

*Compare Sovereign Bank v. Sturgis*, 863 F. Supp. 2d 75, 102 (D. Mass. 2012) ("[T]he Supreme Judicial Court, in defining the statutory power of sale incorporated by paragraph twenty two, did not include an obligation to comply with [Section 35A].") *and Payne v. U.S. Bank Nat'l Ass'n*, 2013 WL 1282235 (D. Mass. Mar.28, 2013) (finding substantial compliance with the requirements of Section 35A sufficient) *with Ross v. Deutsche Bank Nat'l Trust Co*., 933 F. Supp. 2d 225, 232 (D. Mass. 2013) ("[B]ecause the notice requirement is part of the Massachusetts statutory scheme regulating foreclosure, mortgagees seeking to foreclose must comply strictly with the notice requirement.").

While a rule of incorporation, tempered by a substantial compliance standard, would seem consistent with this court's interpretation of the interplay between Paragraph 22 of the Mortgage Agreement and the 2008 Notice, that issue need not now be resolved. Section 35A by its own terms does not apply to "mortgages . . . whose statutory condition has been voided under the terms of the mortgage to secure the note, prior to the effective date of this act." 2007 Mass. Legis. Serv., ch. 206, § 21. Section 35A took effect on May 1, 2008. The "statutory condition" (which *may* be incorporated by reference in the Mortgage Agreement) is set out in Mass. Gen. Laws ch. 183, § 20. It provides that a "mortgagor . . . shall perform any obligation secured at the time provided in the note." It follows that the failure of the borrower to make mortgage payments

as required by the Mortgage Agreement is a breach of the statutory condition. *See Negron v. Gordon*, 373 Mass. 199, 205 (1997). *See also Randle v. GMAC Mortg.*, 2010 WL 3984714 (Mass. Land Ct. Oct. 12, 2010) ("[A]s of May 1, 2008, Randle already had breached the statutory condition because Randle had been materially delinquent in her mortgage payments since, at the least, April of 2005."). Section 35A does not, as it did not in *Randle*, apply to Cades because she had breached the statutory condition prior to Section 35A's effective date (May 1, 2008), by failing to make her mortgage payments in February, May, June, July, and August of 2006.[5]

## Validity of the Mortgage Assignment (Count II)

Cades next argues that the Assignment of her mortgage by MERS to BNYM was in violation of the Trust Pooling and Servicing Agreement (PSA) because MERS was not a party to the PSA and that an Assignment made in "contravention of the [terms of the] Trust itself," by definition renders a foreclosure void. Compl. ¶ 68. Whether this is true or not, Cades lacks

---

[5] Cades's argument that Section 35A should be applied retroactively in her case because her pre-2008 Mortgage Agreement did not specifically incorporate or refer to the statutory condition consistent with the provisions of Section 35A, makes no logical sense. In any event, the statutory condition that she tender her mortgage payments on the dates due is an explicit term of her Mortgage Agreement whether or not the drafter of the agreement chose to use the precise wording of, or refer specifically to, Mass. Gen. Laws ch. 183, § 20.

standing to assert the rights of the Trust.  "[C]laims that merely assert procedural infirmities in the assignment of a mortgage, such as a failure to abide by the terms of a governing trust agreement, are barred for lack of standing." *Woods v. Wells Fargo Bank,* 733 F.3d 349, 354 (1st Cir. 2013).[6] "Insofar as Woods's amended complaint also suggests that the assignments were in violation of the Trust's Pooling and Servicing Agreement, we find that no standing exists as to those alternate claims, which would render the assignment only voidable." *Id.* at 354 n.4.[7]

### Violation of M.G.L. c. 93A (Count III)

To prevail on a Chapter 93A claim, a plaintiff must show that a defendant engaged in "[u]nfair methods of competition and unfair or deceptive acts or practices in business transactions." Mass. Gen. Laws ch. 93A, § 2. Practices are deceptive in the context of Chapter 93A if they could reasonably be found to have "'caused a person to act differently from the way [she] otherwise would

---

[6] In *Woods*, the First Circuit noted that "[i]n contrast, standing exists for challenges that contend that the assigning party never possessed legal title and, as a result, no valid transferable interest ever exchanged hands." *Woods*, 733 F.3d at 354, citing *Ibanez*, 458 Mass. at 651.

[7] Cades relies on *Wells Fargo Bank, N.A. v. Erobobo*, 2013 WL 1831799 (N.Y. Sup. Ct. Apr. 29, 2013), an unpublished New York trial court decision. The *Erobobo* holding, that violation of terms of a PSA regulating the timing of asset transfers would void the transfer of an asset into a trust, is neither on point nor of precedential value in this Circuit.

have acted.'" *See Aspinall v. Philip Morris Cos., Inc.*, 442 Mass. 381, 394 (2004), quoting *Purity Supreme, Inc. v. Atty. Gen.*, 380 Mass. 762, 777 (1980). Cades alleges that BNYM violated Chapter 93A by acting "unfairly and/or deceptively when it failed to strictly follow the terms of the 2005 Mortgage and [Mass. Gen. Laws. ch.] 244, § 35A." Compl. ¶ 78. Cades also alleges that BNYM falsely "claimed to be the valid holder of the 2005 Mortgage with authority to foreclose and sell the property." *Id.* ¶ 80. Because the court has determined that Section 35A is inapplicable, and Cades does not have standing to challenge the Assignment, her Chapter 93A claims have no legal basis.[8]

**Setting Aside the Sale to Pacifica Seacove LP (Count IV)**

This claim for relief is premised solely on the failed contention that BNYM did not strictly comply with the Mortgage Agreement or the statutory power of sale, and fails with it.

**Setting Aside the Foreclosure By Entry (Count V)**

---

[8] Moreover, "[i]t is not enough in the context of Chapter 93A for [a plaintiff] to allege that the defendant foreclosed on her property in violation of Massachusetts foreclosure law. Something more is required for [a plaintiff] to establish that the violation 'has an extortionate quality that gives it the rancid flavors of unfairness and deceptiveness.'" *Juarez v. Select Portfolio Servicing, Inc.*, 708 F.3d 269, 281 (1st Cir. 2013), quoting *Arthur D. Little, Inc. v. Dooyang Corp.*, 147 F.3d 47, 55 (1st Cir. 1998) (internal quotations omitted). The technical violations Cades asserts, even if actionable, do not exude even a whiff of rancidity.

To effect a foreclosure by entry, Mass. Gen. Laws ch. 244, § 1, requires that there be three years of peaceable possession "from the date of recording of the memorandum or certificate." Cades alleges that the Certificate of Entry was recorded on July 26, 2012, less than three years ago, and that her instant court action interrupted BNYM's peaceable possession of the property, thereby voiding the foreclosure by entry. This argument is based on two recent Massachusetts Bankruptcy Court decisions. *See In re Silveira,* 2013 WL 1867472 (Bankr. D. Mass. May 3, 2013), and *In re Loucheschi LLC*, 496 B.R. 41 (Bankr. D. Mass. 2013) (holding that an adversarial proceeding interrupts a lender's peaceable possession of the property). The argument need not be addressed, however, as BNYM had the alternative (and separate) right to foreclose under the statutory power of sale. *See* Mass. Gen. Laws ch. 244, §§ 11–15, 17.

## ORDER

For the foregoing reasons, defendants' Motion to Dismiss is <u>ALLOWED</u> with prejudice. The Clerk will enter judgment accordingly and close the case.

SO ORDERED.

/s/ Richard G. Stearns
_____
UNITED STATES DISTRICT JUDGE